**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**RICHARD A. RUPERTO, and**
**KIMBERLY RUPERTO**

                                   **Case No:**

            **Plaintiffs,**

**vs.**

**SHERIFF WILLIAM D. SNYDER,**
**In his official capacity, and**
**LEONARD DeBELLIS,**
**Individually,**
**ERIN D. KIRKWOOD,**
**Individually,**
**KRISTEN A. CHASE,**
**Individually,**
**NATIONAL CHRISTIAN**
**COUNSELORS ASSOCIATION, and**
**NCCCHURCH.**

            **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      **COMES NOW**, the Plaintiff, **RICHARD RUPERTO**, by and through the undersigned

counsel and sues the Defendants, **SHERIFF WILLIAM D. SNYDER, LEONARD DeBELLIS**,

**ERIN D. KIRKWOOD, KRISTEN A. CHASE, NATIONAL CHRISTIAN COUNSELORS**

**ASSOCIATION** and **NCCCHURCH,** for damages and Plaintiff, **KIMBERLY RUPERTO**, brings

a derivative loss of consortium claim and allege as follows:

## JURISDICTION AND VENUE

      1.     This action arises under the Constitution and laws of the United States, particularly 42

U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution.

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and on the supplemental jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367 and Local Rule 1.02(b)(4).

3.      Venue is proper in this district because it is where the events complained of occurred.

4.      This is an action for damages which exceeds the sum of Seventy Five Thousand Dollars ($75,000.00).

5.      The incident which gives rise to this cause of action occurred within this jurisdiction and within the applicable statute of limitations and this Honorable Court has jurisdiction.

6.      Plaintiffs have timely filed their Notice of Claim pursuant to § 768.28, Fla. Stat. (2013), regarding their state tort claims against Defendants. The Defendants have rejected the claim. There is no administrative exhaustion requirement regarding Plaintiffs' civil rights claims under 42 U.S.C. § 1983.

## PARTIES

7.      The Plaintiff, RICHARD RUPERTO, an adult, is a natural born citizen of the United States, resident of Martin County, State of Florida.

8.      The Plaintiff, KIMBERLY RUPERTO, an adult, is a natural born citizen of the United States, resident of Martin County, State of Florida.

9.      Defendant, SHERIFF SNYDER, as Sheriff of the Martin County Sheriff's Department, receives federal funds and by and through its officials, employees, and deputies is under a duty to run its policing activities in a lawful manner so as to preserve the peace to its citizens the rights, privileges and immunities guaranteed and secured to them by the constitutions and the laws of the United States and the State of Florida. Defendant, SHERIFF SNYDER, does not have immunity

for violating the civil rights of citizens and has waived sovereign immunity for the negligent acts or omissions of its employees arising out of and in the course and scope of their employment complained of herein pursuant to Section 768.28, Florida Statutes.

10. Defendant, LEONARD DeBELLIS, was at all times relevant to this Complaint duly appointed and acting as a Detective at the Martin County Sheriff's Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Martin County Sheriff's Department. Defendant, LEONARD DeBELLIS, is sued in his individual capacity.

11. Defendant, ERIN D. KIRKWOOD, was at all times relevant to this Complaint duly appointed and acting as an Assistant State Attorney at the Office of the State Attorney, Nineteenth Judicial Circuit, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the State Attorney's Office. Defendant, ERIN D. KIRKWOOD, is sued in her individual capacity.

12. Defendant, KRISTEN A. CHASE, was at all times relevant to this Complaint duly appointed and acting as an Assistant State Attorney at the Office of the State Attorney, Nineteenth Judicial Circuit, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the State Attorney's Office. Defendant, KRISTEN A. CHASE, is sued in her individual capacity.

13. Each and all of the acts of Defendants, SHERIFF WILLIAM D. SNYDER, LEONARD DeBELLIS, ERIN D. KIRKWOOD and KRISTEN A. CHASE, were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America, and the State of Florida, under the color of law and by virtue of their

authority as law enforcement officers for the Defendant, Sheriff Snyder, or as Assistant State Attorney's for the Nineteenth Judicial Circuit. At all times, Defendants were engaged in conduct that was the proximate cause of the violations of Plaintiffs' federally protected rights and state law rights, as more particularized herein.

14.      Defendant, NATIONAL CHRISTIAN COUNSELORS ASSOCIATION (NCCA), was at all times relevant to this Complaint a non-profit corporation, incorporated by the State of Florida with the principle location in Sarasota, Florida.

15.      Defendant, NCCCHURCH (NCCC), was at all times relevant to this Complaint, organized as a church exclusively for charitable, religious, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986. The NCCC functions on a local, national and international level and offers Christian Ordination, Licensing and Commissioning for ministers. The NCCC had been a registered agency in the State of Florida since 1993. The NCCC is now registered in the State of Tennessee.

## FACTS GIVING RISE TO THIS CAUSE OF ACTION

16.      On or around April 11, 2014, Detective Leonard DeBellis with the Martin County Sheriff's Office received undocumented information that Richard Ruperto, Ph.D., was in violation of Fla. Stat. § 465.065 (1), unlicensed practice of health care professional, and Fla. Stat. § 490.012 (d), unlicensed practice of psychological services.

17.      The information received on or around April 11, 2014, was an anonymous phone call to Detective DeBellis (date, time, and phone number reportedly not recorded by law enforcement or Detective DeBellis), in which the caller stated that "a friend" had seen Dr. Ruperto, and that they did not believe he had the necessary Florida licenses.

18. Detective DeBellis contacted Florida Department of Health employee, Kevin Lapham, who conducted two recorded sessions with Dr. Ruperto on August 13, 2014 and August 26, 2014, using the undercover name of Paul LaRue.

19. The two recorded undercover sessions were the basis for Detective DeBellis' application for a search warrant on September 25, 2014, for Dr. Richard Ruperto's office at 218 SE Osceola Street, Stuart, Florida, 34995.

20. Richard Ruperto holds a Master's Degree in Christian Counseling from Cornerstone University and a Doctorate in Clinical Christian Counseling from Cornerstone University. Cornerstone University is accredited by the Accrediting Commission International, Inc., which primarily accredits religious institutes and schools. Richard Ruperto is also licensed by the National Christian Counselors Association, "NCCA", and is provided Ministerial Credentials by the NCCCHURCH, "NCCC". Richard Ruperto pays monthly dues to maintain the sponsorship of the NCCC. Richard Ruperto is a Licensed Minister of the Gospel, who can perform all Ministerial and Clergy functions applicable to a Licensed Minister, and is provided these credentials by the NCCC. The NCCA refers Christian Counselors to the NCCC as a Recognized Ministerial Credentialing Fellowship. Richard Ruperto has been trained by the NCCA in the following areas: Integrated Marriage & Family Therapy, Child and Adolescent Therapy, Substance Abuse and Addiction Therapy, Sexual Therapy, Death and Grief Therapy, Crisis and Abuse Therapy, Domestic Violence and Intervention Therapy, and Group Therapy, among other areas of study. Dr. Ruperto is board certified by the NCCA in the following areas: Board Certified Temperament Therapist, Board Certified Crisis and Abuse Therapy, Board Certified Integrated Marriage and Family Therapy, Board Certified Group Therapy. Dr. Ruperto has advanced board certifications by the NCCA in the

following areas: Death and Grief Therapy, Child and Adolescent Therapy, Substance Abuse and Addiction Therapy, and Group Therapy.

21.      The NCCA has been granted a Religious Institute Letter of Exemption from the Florida Department of Education, Commission for Independent Education. On December 3, 2013, Executive Director Samuel Ferguson sent a letter to Steve Baran, President of the NCCA, confirming this exemption until November of 2014. The NCCA has been a registered agency in the State of Florida since 1992. The NCCC has been a registered agency in the State of Florida since 1993.

22.      The NCCC denied their sponsorship of Richard Ruperto, despite that fact he had maintained his monthly dues.

23.      Detective DeBellis failed to provide the Office of the State Attorney or the reviewing court the above information about the NCCA, the NCCC, or Dr. Ruperto's clergy credentials in his Affidavit and Application for Search Warrant or prior to the execution of the Search Warrant.

24.      On August 13, 2014, Kevin Lapham with the Florida Department of Health saw Dr. Richard Ruperto in an undercover capacity. Detective DeBellis never documented the portions of the recorded conversation on August 13, 2014, in his search warrant application, which clearly show that Dr. Ruperto is a Christian, who is providing Christian Counseling and advice.

25.      Detective DeBellis states in his application for search warrant, "Ruperto displays a Pastoral Medical Association (PMA), division of License and Regulation; which is not a valid license in the State of Florida. In the PMA directory Ruperto lists his specialties as auricular, counseling (general health – mental health – nutrition – spiritual – education and degree programs – multiple modalities – pastoral licensing)."

26.     In his Affidavit, Detective DeBellis did not list nor did he even mention the multiple certificates, diplomas, and documentation displayed in Dr. Ruperto's office that show his education, and certifications with the NCCA or the NCCC.

27.     Detective DeBellis' Affidavit and Search Warrant Application states that Dr. Ruperto was in violation of the following Florida Statutes:

      a.     F.S.S. 456.065 Unlicensed practice of health care practitioner, X2.

      b.     F.S.S. 490.012 (d) Unlicensed practice of psychological services, X2.

      c.     F.S.S. 490.012 (j) Unlicensed marriage counselor, X2.

28.     Detective DeBellis' search warrant application for Dr. Ruperto's Office, did not mention his licensing with the NCCA or the NCCC. It does not include any reference to Dr. Ruperto being trained as a licensed Clinical Christian Counselor. Additionally, Detective DeBellis never inquired into the level of training and education that was necessary for Dr. Ruperto to earn his degrees, certificates, and licensing through the NCCA.

29.     Detective DeBellis never had any complaint that Dr. Ruperto was practicing acupuncture, acupressure, massage, nutritional counseling, or writing prescriptions.  Nonetheless, Detective DeBellis wrote in his Search Warrant Application in the Property Sought Section (and also included in the Search Warrant) that the affiant has good reason to believe that there is now being kept in the above premises the following:

      4.) Pamphlets, degrees, and all certificates indicating training, experience in the practice of acupuncture, acupuncture without needles, acupressure, massage nutritional counseling, and any health care practice, or other health care profession.

      7.) Any prescription pads or papers.

30.     Detective DeBellis was recorded during the reading of the Search Warrant to Dr. Richard Ruperto, and omits reading section 4.) of the Search Warrant in detail, which states: "Pamphlets, degrees, and all certifications indicating training, experience in the practice of acupuncture, acupuncture without needles, acupressure, massage nutritional counseling, and any health care practice, or other health care profession. (emphasis added) Rather, Detective DeBellis states the following: "Pamphlets, degrees, and all certificates indicating training, experience in the practice...ok, of and any health care practice, or other health care profession."

31.     Detective DeBellis willfully omitted the reading to Dr. Ruperto of the portion of the search warrant dealing with acupuncture, massage, and nutritional counseling.

32.     Detective DeBellis willfully omitted from the Application for Search warrant, material factors relating to Clinical Christian Counseling, Dr. Ruperto's education and training, Dr. Ruperto's clergy credentials, as well as Florida Statutory Exemptions relating directly to Christian Counseling. Detective DeBellis willfully included in his Application for Search Warrant allegations of illegal activity to be found on premises, to include: acupuncture, massage, and nutritional counseling. This information was never investigated and there was no basis for even arguable Probable Cause or even a Reasonable Suspicion that Dr. Ruperto should have been investigated for the alleged illegal practice of acupuncture, massage, or nutritional counseling, which lead to the Court's determination of Probable Cause.

33.     Detective DeBellis willfully included in his Application for Search Warrant allegations of the use of prescription pads or papers. This was never mentioned in the investigation, undercover visits, or the alleged "anonymous call" that Detective DeBellis received, and should not have been included in the Property Sought.

34.     As a result of the Affidavit, Mr. Ruperto was arrested on September 25, 2014, and spent 1 day in jail on Martin County Sheriff's Office Agency Case Number 14-7630 and Martin County Case Number 14-1188.

35.     Following Mr. Ruperto's arrest on September 25, 2014, Assistant State Attorney, Erin D. Kirkwood, met with Plaintiff's Criminal Defense Attorneys, Lily McCarty and Maria Pavlidis. The Defense attorneys explained Mr. Ruperto's clergy credentials and his licensing with the NCCA and the NCCC. This information put Assistant State Attorney, Erin D. Kirkwood, on notice that Mr. Ruperto clearly fell within the Florida Statutory Exemptions relating directly to Christian Counseling.

36.     In late December 2014, even with the information provided by the Criminal Defense Attorneys, Assistant State Attorney, Erin D. Kirkwood, filed an Information in Case Number 14-1188, charging Mr. Ruperto with two additional counts of Unlicensed Practice of a Health Care Professional; two counts of Unlawful Description of Clinical Counseling or Psychotherapy Services; two counts of Practicing Psychology without a License; five counts of Unlawful Use of the Word Psychotherapy; and one count of Unlawful Use of the Words Psychological or Psychodiagnostic. The capias specifically listed Martin County Sheriff's Office Agency Number 14-7630, the same investigation that Mr. Ruperto was arrested for on September 25, 2014.

37.     On January 6, 2015, Mr. Ruperto turned himself in on these charges as soon as his counsel was advised the capias was active and spent 1 day in jail.

38.     On March 20, 2015, Detective DeBellis filed another Complaint Affidavit that Dr. Ruperto was in violation of the following Florida Statutes:

a.      F.S.S. 817.034(4)(a)(3) Scheme to Defraud

      b.      F.S.S. 456.065(2)(d)(1) Unlicensed Practice of a Health Care Practitioner X3

      c.      F.S.S. 490.012(6) Unlicensed Practice of Psychology X3

39.    The arrest warrant signed on March 20, 2015, lists seven counts dating "on or about July 1, 2012". These dates are clearly outside the statute of limitations for the three listed misdemeanor counts. Fla. Stat. § 775.15 (1)(c) states "A prosecution for a misdemeanor of the first degree must be commenced within 2 years after it is committed." The Arrest Warrant specifies for Counts 5, 6, and 7, "On or about July 1, 2012 Richard Ruperto did practice psychology for compensation, without holding an active, valid license to practice psychology issued pursuant to Florida Statutes chapter 490, in violation of Florida Statute 490.012 (4),(6)."

40.    The Complaint Affidavit lists three specified victims; Patricia Adams, Anne Sammito, and Stephen Jarrett. According to the sworn testimony of Leonard DeBellis, Ms. Adams was interviewed on October 14, 2014, at the Martin County Sheriff's Office; Mr. Jarrett was interviewed at the Martin County Sheriff's Office on November 12, 2014; and Ms. Sammito was interviewed on November 14, 2014. These interviews occurred prior to the Office of the State Attorney filing the Information on January 6, 2015 in Case Number 14-1188, and clearly were able to be filed with the initial Information in case 14-1188. These additional charges Mr. Ruperto was arrested for on March 21, 2015 concern the same investigation, in Agency Number 14-7630, and the very same time period of his two prior arrests in September 2014 and January 2015.

41.    Assistant State Attorney, KRISTEN A. CHASE, pursued these additional charges against Plaintiff, even with the knowledge that the Statute of Limitations had already passed.

42.    Law Enforcement and the State Attorney's Office purposely withheld the interviews with the above listed alleged victims, in an effort to arrest Mr. Ruperto on multiple occasions, and in

an attempt to create more than one case file. These are deliberate actions aimed at continuously harassing and obtaining multiple arrest warrants for Mr. Ruperto.

43.     Mr. Ruperto was arrested for the third time on March 21, 2015 and spent six days in jail.

44.     Ultimately, all false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

45.     As a result of the three false arrests, Mr. Ruperto sent a total of eight days in jail.

**CLAIMS FOR RELIEF**

**COUNT I**
**42 U.S. 1983 – FALSE ARREST ON SEPTEMBER 25, 2014**
**LEONARD DeBELLIS**

46.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

47.     Plaintiff, RICHARD RUPERTO, was unlawfully seized by Defendant, LEONARD DeBELLIS, through the intentional use of force and confinement, when Defendant, LEONARD DeBELLIS, caused and authorized the detention of Plaintiff, RICHARD RUPERTO, when he applied for a search warrant for Plaintiff, RICHARD RUPERTO, and filed a Complaint Affidavit, which led to the arrest of Plaintiff, RICHARD RUPERTO, on September 25, 2014.

48.     The seizure and arrest of Plaintiff, RICHARD RUPERTO, without arguable probable cause violated Plaintiff's Fourth Amendment rights.

49.     Based on the facts and circumstances within Defendant, LEONARD DeBELLIS', knowledge, assuming he had reasonably trustworthy information, would not cause a prudent person

to believe, under the circumstances shown, that Plaintiff, RICHARD RUPERTO, had committed or was committing an offense.

50.    A reasonable officer in the same circumstances and possessing the same knowledge as Defendant, LEONARD DeBELLIS, could not have believed that arguable probable cause existed to arrest Plaintiff, RICHARD RUPERTO. Specifically, based on the exemption provided in Fla. Stat. § 491.014 (3), regarding the activities of a rabbi, priest, minister, or member of the clergy of any religious denomination or sect, or use of the terms "Christian counselor" or "Christian clinical counselor" when the activities are within the scope of the performance of his or her regular or specialized ministerial duties and no compensation is received by him or her, or when such activities are performed, with or without compensation, by a person for or under the auspices or sponsorship, individually or in conjunction with others, of an established and legally cognizable church, denomination or sect, and when the person rendering services remains accountable to the established authority thereof.

51.    The unlawful seizure caused the Plaintiff to suffer mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT II
## 42 U.S. 1983 – FALSE ARREST ON JANUARY 6, 2015
## LEONARD DeBELLIS

52.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

53.     Plaintiff, RICHARD RUPERTO, was unlawfully seized by Defendant, LEONARD DeBELLIS, through the intentional use of force and confinement, when Defendant, LEONARD DeBELLIS, caused and authorized the detention of Plaintiff, RICHARD RUPERTO, when he applied for a search warrant for Plaintiff, RICHARD RUPERTO, and filed a Complaint Affidavit, which led to the arrest of Plaintiff, RICHARD RUPERTO, on January 6, 2015.

54.     The seizure and arrest of Plaintiff, RICHARD RUPERTO, without arguable probable cause violated Plaintiff's Fourth Amendment rights.

55.     Based on the facts and circumstances within Defendant, LEONARD DeBELLIS', knowledge, assuming he had reasonably trustworthy information, would not cause a prudent person to believe, under the circumstances shown, that Plaintiff, RICHARD RUPERTO, had committed or was committing an offense.

56.     A reasonable officer in the same circumstances and possessing the same knowledge as Defendant, LEONARD DeBELLIS, could not have believed that arguable probable cause existed to arrest Plaintiff, RICHARD RUPERTO. Specifically, based on the exemption provided in Fla. Stat. § 491.014 (3), regarding the activities of a rabbi, priest, minister, or member of the clergy of any religious denomination or sect, or use of the terms "Christian counselor" or "Christian clinical counselor" when the activities are within the scope of the performance of his or her regular or specialized ministerial duties and no compensation is received by him or her, or when such activities are performed, with or without compensation, by a person for or under the auspices or sponsorship, individually or in conjunction with others, of an established and legally cognizable church, denomination or sect, and when the person rendering services remains accountable to the established authority thereof.

57.     The unlawful seizure caused the Plaintiff to suffer mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

**COUNT III**
**42 U.S. 1983 – FALSE ARREST ON MARCH 21, 2015**
**LEONARD DeBELLIS**

58.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

59.     Plaintiff, RICHARD RUPERTO, was unlawfully seized by Defendant, LEONARD DeBELLIS, through the intentional use of force and confinement, when Defendant, LEONARD DeBELLIS, caused and authorized the detention of Plaintiff, RICHARD RUPERTO, when he filed another Complaint Affidavit that Plaintiff was in violation of Florida Statutes: F.S.S. 817.034(4)(a)3 Scheme to Defraud; F.S.S. 456.065(2)(d)(1) Unlicensed Practice of a Health Care Practitioner X3; and F.S.S. 490.012(6) Unlicensed Practice of Psychology X3, which led to the arrest of Plaintiff, RICHARD RUPERTO, on March 21, 2015.

60.     The arrest warrant signed on March 20, 2015, lists seven counts dating "on or about July 1, 2012". These dates are clearly outside the statute of limitations for the three listed misdemeanor counts.

61.     The Complaint Affidavit lists three specified victims; Patricia Adams, Anne Sammito, and Stephen Jarrett. According to the sworn testimony of Leonard DeBellis, Ms. Adams was interviewed on October 14, 2014, at the Martin County Sheriff's Office; Mr. Jarrett was interviewed at the Martin County Sheriff's Office on November 12, 2014; and Ms. Sammito was

Page **14** of **29**

interviewed on November 14, 2014. These interviews occurred prior to the Office of the State Attorney filing the Information on January 6, 2015 in Case Number 14-1188, and clearly were able to be filed with the initial Information in case 14-1188. These additional charges Mr. Ruperto was arrested for on March 21, 2015 concern the same investigation, in Agency Number 14-7630, and the very same time period of his two prior arrests in September 2014 and January 2015.

62.     Defendant, LEONARD DeBELLIS, purposely withheld the interviews with the above listed alleged victims, in an effort to arrest Mr. Ruperto on multiple occasions, and in an attempt to create more than one case file. These are deliberate actions aimed at continuously harassing and obtaining multiple arrest warrants for Mr. Ruperto.

63.     The seizure and arrest of Plaintiff, RICHARD RUPERTO, without arguable probable cause violated Plaintiff's Fourth Amendment rights.

64.     Based on the facts and circumstances within Defendant, LEONARD DeBELLIS', knowledge, assuming he had reasonably trustworthy information, would not cause a prudent person to believe, under the circumstances shown, that Plaintiff, RICHARD RUPERTO, had committed or was committing an offense.

65.     A reasonable officer in the same circumstances and possessing the same knowledge as Defendant, LEONARD DeBELLIS, could not have believed that arguable probable cause existed to arrest Plaintiff, RICHARD RUPERTO.

66.     The unlawful seizure caused the Plaintiff to suffer mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT IV
## 42 U.S. 1983 – MALICIOUS PROSECUTION
## LEONARD DeBELLIS

67.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

68.     As a result of the actions taken by Defendant, LEONARD DeBELLIS, original judicial proceeding against present plaintiff was commenced and/or continued.

69.     Defendant, LEONARD DeBELLIS', failed to consider potentially exculpatory information and refused to investigate impartially. Due to his improper actions, the Judge was presented with false and misleading information. The criminal prosecution was a natural consequence of the defendants' deceptive account of the actions of Plaintiff, RICHARD RUPERTO, and its surrounding circumstances.

70.     Defendant, LEONARD DeBELLIS, was the legal cause of original proceeding.

71.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

72.     There was no probable cause for the original proceeding.

73.     The actions of Defendant, LEONARD DeBELLIS, were done with malice.

74.     Plaintiff, RICHARD RUPERTO, suffered damages as result of the false arrest.

## COUNT V
## 42 U.S. 1983 – MALICIOUS PROSECUTION
## ERIN D. KIRKWOOD

75.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

76.     As a result of the actions taken by Defendant, ERIN D. KIRKWOOD, original judicial proceeding against present plaintiff was commenced and/or continued.

77.     Defendant, ERIN D. KIRKWOOD, knew Mr. Ruperto's clergy credentials and his licensing with the NCCA and the NCCC. She knew that Mr. Ruperto clearly fell within the Florida Statutory Exemptions relating directly to Christian Counseling.

78.     In spite of that information, Defendant, ERIN D. KIRKWOOD, still filed an Information in Case Number 14-1188, charging Mr. Ruperto with two additional counts of Unlicensed Practice of a Health Care Professional; two counts of Unlawful Description of Clinical Counseling or Psychotherapy Services; two counts of Practicing Psychology without a License; five counts of Unlawful Use of the Word Psychotherapy; and one count of Unlawful Use of the Words Psychological or Psychodiagnostic. The capias specifically listed Martin County Sheriff's Office Agency Number 14-7630, the same investigation that Mr. Ruperto was arrested for on September 25, 2014.

79.     Defendant, ERIN D. KIRKWOOD, was the legal cause of original proceeding.

80.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

81.     There was no probable cause for the original proceeding.

82.     The actions of Defendant, ERIN D. KIRKWOOD, were done with malice.

83.     Plaintiff, RICHARD RUPERTO, suffered damages as result of the malicious prosecution.

## COUNT VI
## 42 U.S. 1983 – MALICIOUS PROSECUTION
## KRISTEN A. CHASE

84.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

85.     As a result of the actions taken by Defendant, KRISTEN A. CHASE, original judicial proceeding against present plaintiff was commenced and/or continued.

86.     Defendant, KRISTEN A. CHASE, pursued additional charges against Plaintiff, even with the knowledge that the Statute of Limitations had already passed.

87.     Defendant, KRISTEN A. CHASE, purposely withheld the interviews with the above listed alleged victims, in an effort to arrest Mr. Ruperto on multiple occasions, and in an attempt to create more than one case file. These are deliberate actions aimed at continuously harassing and obtaining multiple arrest warrants for Mr. Ruperto.

88.     Defendant, KRISTEN A. CHASE, was the legal cause of original proceeding.

89.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

90.     There was no probable cause for the original proceeding.

91.     The actions of Defendant, KRISTEN A. CHASE, were done with malice.

92.     Plaintiff, RICHARD RUPERTO, suffered damages as result of the malicious prosecution.

## STATE LAW CLAIMS

### COUNT VII
### STATE LAW CLAIM - FALSE ARREST –
### DEFENDANT, LEONARD DeBELLIS
### (BAD FAITH, WILLFUL AND WANTON)

93.     The Plaintiff re-alleges each and every allegation as set forth in the factual allegations in counts 1- 45.

94.     At all times relevant herein, Defendant, LEONARD DeBELLIS, acted with the intention of confining the Plaintiff within fixed boundaries. The acts directly or indirectly resulted in confinement, and the Plaintiff was conscious of the confinement.

95.     Defendant, LEONARD DeBELLIS, acted in bad faith and with malicious purpose as the Plaintiff had committed no illegal acts.

96.     The Defendant, LEONARD DeBELLIS', actions were unreasonable and unwarranted under the circumstances.

97.     As a further direct and proximate result of the acts, omissions, and conduct of the Defendant, LEONARD DeBELLIS, the Plaintiff suffered from mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT VIII
## STATE LAW FALSE ARREST –
## DEFENDANT, SHERIFF WILLIAM SNYDER FOR
## ACTIONS OF LEONARD DeBELLIS
## (COURSE AND SCOPE OF EMPLOYMENT)

98.     The Plaintiff re-alleges each and every allegation as set forth in the factual allegations in counts 1- 45.

99.     Defendant, LEONARD DeBELLIS', actions in holding Plaintiff against his will, without probable cause, without process or authority of law, constitute wrongful, unlawful false imprisonment which is actionable against Defendant, SHERIFF SNYDER.

100.    The Defendant, LEONARD DeBELLIS, knew or had the opportunity to know, and should have known, the false imprisonment of Plaintiff was without legal justification.

101.    Alternatively to Count VII, the actions of Defendant, LEONARD DeBELLIS, were performed in the course and scope of his employment with the Martin County Sheriff's Department and without bad faith, malicious purpose and not in a manner exhibiting wanton and willful disregard of human rights, safety and property.

102.    As a direct and proximate result of the acts of Defendant, LEONARD DeBELLIS, Plaintiff was arrested, detained, confined in jail and suffered from mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

103.    Defendant, LEONARD DeBELLIS', conduct is actionable against Defendant, SHERIFF SNYDER, pursuant to § 768.28, Fla. Stat. (2009).

## COUNT IX
## STATE LAW CLAIM - FALSE ARREST –
## DEFENDANT, NCCA

104.    The Plaintiff re-alleges each and every allegation as set forth in the factual allegations in counts 1- 45.

105.    At all times relevant herein, Defendant, NCCA, intentionally provided false information which cause the intentional confinement of the Plaintiff within fixed boundaries. The acts directly or indirectly resulted in confinement, and the Plaintiff was conscious of the confinement.

106.    The Defendant, NCCA's, actions were unreasonable and unwarranted under the circumstances.

107.    As a further direct and proximate result of the acts, omissions, and conduct of the Defendant, NCCA, the Plaintiff suffered from mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT X
## STATE LAW CLAIM - FALSE ARREST –
## DEFENDANT, NCCC

108.    The Plaintiff re-alleges each and every allegation as set forth in the factual allegations in counts 1- 45.

109.    At all times relevant herein, Defendant, NCCC, intentionally provided false information which cause the intentional confinement of the Plaintiff within fixed boundaries. The acts directly or indirectly resulted in confinement, and the Plaintiff was conscious of the confinement.

110.     The Defendant, NCCC's, actions were unreasonable and unwarranted under the circumstances.

111.     As a further direct and proximate result of the acts, omissions, and conduct of the Defendant, NCCC, the Plaintiff suffered from mental anguish, loss of capacity for the enjoyment of life, loss of employment and attorneys' fees incurred to secure his release from the illegal restraint, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

**COUNT XI**
**STATE LAW CLAIM –MALICIOUS PROSECUTION–**
**DEFENDANT, LEONARD DeBELLIS**

112.     The Plaintiff re-alleges each and every allegation as set forth in the factual allegations in counts 1- 45.

113.     As a result of the actions taken by Defendant, LEONARD DeBELLIS, original judicial proceeding against present plaintiff was commenced and/or continued.

114.     Defendant, LEONARD DeBELLIS', failed to consider potentially exculpatory information and refused to investigate impartially. Due to his improper actions, the Judge was presented with false and misleading information. The criminal prosecution was a natural consequence of the defendants' deceptive account of the actions of Plaintiff, RICHARD RUPERTO, and its surrounding circumstances.

115.     Defendant, LEONARD DeBELLIS, was the legal cause of original proceeding.

116.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

117.     There was no probable cause for the original proceeding.

118.    The actions of Defendant, LEONARD DeBELLIS, were done with malice.

119.    Plaintiff, RICHARD RUPERTO, suffered damages as result of the false arrest and malicious prosecution.

**COUNT XII**
**STATE LAW CLAIM –MALICIOUS PROSECUTION**
**ERIN D. KIRKWOOD**

120.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

121.    As a result of the actions taken by Defendant, ERIN D. KIRKWOOD, original judicial proceeding against present plaintiff was commenced and/or continued.

122.    Defendant, ERIN D. KIRKWOOD, knew Mr. Ruperto's clergy credentials and his licensing with the NCCA and the NCCC. She knew that Mr. Ruperto clearly fell within the Florida Statutory Exemptions relating directly to Christian Counseling.

123.    In spite of that information, Defendant, ERIN D. KIRKWOOD, still filed an Information in Case Number 14-1188, charging Mr. Ruperto with two additional counts of Unlicensed Practice of a Health Care Professional; two counts of Unlawful Description of Clinical Counseling or Psychotherapy Services; two counts of Practicing Psychology without a License; five counts of Unlawful Use of the Word Psychotherapy; and one count of Unlawful Use of the Words Psychological or Psychodiagnostic. The capias specifically listed Martin County Sheriff's Office Agency Number 14-7630, the same investigation that Mr. Ruperto was arrested for on September 25, 2014.

124.    Defendant, ERIN D. KIRKWOOD, was the legal cause of original proceeding.

125.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

126.     There was no probable cause for the original proceeding.

127.     The actions of Defendant, ERIN D. KIRKWOOD, were done with malice.

128.     Plaintiff, RICHARD RUPERTO, suffered damages as result of the malicious prosecution.

**COUNT XIII**
**STATE LAW CLAIM –MALICIOUS PROSECUTION**
**KRISTEN A. CHASE**

129.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

130.     As a result of the actions taken by Defendant, KRISTEN A. CHASE, original judicial proceeding against present plaintiff was commenced and/or continued.

131.     Defendant, KRISTEN A. CHASE, pursued additional charges against Plaintiff, even with the knowledge that the Statute of Limitations had already passed.

132.     Defendant, KRISTEN A. CHASE, purposely withheld the interviews with the above listed alleged victims, in an effort to arrest Mr. Ruperto on multiple occasions, and in an attempt to create more than one case file. These are deliberate actions aimed at continuously harassing and obtaining multiple arrest warrants for Mr. Ruperto.

133.     Defendant, KRISTEN A. CHASE, was the legal cause of original proceeding.

134.     The original proceedings constituted bona fide termination of that proceeding in favor of the Plaintiff. Ultimately, all twenty-five false charges were either Nolle Prossed or no-filed by the State Attorney's Office by September 3, 2015.

135.     There was no probable cause for the original proceeding.

136.     The actions of Defendant, KRISTEN A. CHASE, were done with malice.

137.     Plaintiff, RICHARD RUPERTO, suffered damages as result of the malicious prosecution.

**COUNT XIV**
**STATE LAW CLAIM – NEGLIGENCE**
**NATIONAL CHRISTIAN COUNSELORS**

138.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

139.     Defendant owed a duty to provide accurate information to law enforcement when questioned about their sponsorship and credentialing of individuals.

140.     At all times material, Defendant breached this duty of care to Plaintiff when they denied their sponsorship of Plaintiff even after Plaintiff continuously paid his monthly dues to retain the sponsorship.

141.     The Defendant was negligent in that it failed to provide accurate information to law enforcement regarding their sponsorship of Plaintiff.

142.     As a direct and proximate result of Defendant's negligence, Mr. Ruperto was arrested and taken into custody by the Martin County Sheriff's Office.

143.     The conduct complained of demonstrates reckless, culpable conduct to the level of punitive damages.

144.    Plaintiff, RICHARD RUPERTO, suffered damages as result of the negligence

**COUNT XV**
**STATE LAW CLAIM – NEGLIGENCE**
**NCCCHURCH**

145.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 45 above, and further alleges:

146.    Defendant owed a duty to provide accurate information to law enforcement when questioned about their sponsorship and credentialing of individuals.

147.    At all times material, Defendant breached this duty of care to Plaintiff when they denied their sponsorship of Plaintiff even after Plaintiff continuously paid his monthly dues to retain the sponsorship.

148.    The Defendant was negligent in that it failed to provide accurate information to law enforcement regarding their sponsorship of Plaintiff.

149.    As a direct and proximate result of Defendant's negligence, Mr. Ruperto was arrested and taken into custody by the Martin County Sheriff's Office.

150.    The conduct complained of demonstrates reckless, culpable conduct to the level of punitive damages.

151.    Plaintiff, RICHARD RUPERTO, suffered damages as result of the negligence

**COUNT XVI**
**LOSS OF CONSORTIUM - DEFENDANT, LEONARD DeBELLIS**

152.    The Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs 1 – 45 of this Complaint, as if fully set forth herein.

153.    At the time of the incidents described in the Complaint, RICHARD RUPERTO and KIMBERLY RUPERTO, were married and continue to be married.

154.    As a result of the wrongful and unlawful acts of Defendant, DeBELLIS, Mr. and Mrs. Ruperto were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

155.    All the aforesaid injuries and damages were caused solely and proximately by the acts of Defendant, DeBELLIS.

### COUNT XVII
### LOSS OF CONSORTIUM - DEFENDANT, ERIN KIRKWOOD

156.    The Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs 1 – 45 of this Complaint, as if fully set forth herein.

157.    At the time of the incidents described in the Complaint, RICHARD RUPERTO and KIMBERLY RUPERTO, were married and continue to be married.

158.    As a result of the wrongful and unlawful acts of Defendant, ERIN KIRKWOOD, Mr. and Mrs. Ruperto were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

159.    All the aforesaid injuries and damages were caused solely and proximately by the acts of Defendant, ERIN KIRKWOOD.

## COUNT XVIII
## LOSS OF CONSORTIUM - DEFENDANT, KRISTEN CHASE

160.   The Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs 1 – 45 of this Complaint, as if fully set forth herein.

161.   At the time of the incidents described in the Complaint, RICHARD RUPERTO and KIMBERLY RUPERTO, were married and continue to be married.

162.   As a result of the wrongful and unlawful acts of Defendant, KRISTEN CHASE, Mr. and Mrs. Ruperto were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

163.   All the aforesaid injuries and damages were caused solely and proximately by the acts of Defendant, KRISTEN CHASE.

## DAMAGES

164.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1-163 above, and further allege:

165.   As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiff, RICHARD RUPERTO'S, constitutional rights were violated and Plaintiffs suffered injuries and damages.  Plaintiffs seek recovery from the Defendants of all damages to which they may be entitled under both state and federal law for the injuries and damages they sustained and which include, but are not limited to, the following:

a.     Emotional Pain and Suffering of a past, present and future nature;

b.     Loss of Enjoyment of Life of a past, present and future nature;

c.     Loss of Employment

Page **28** of **29**

      d.      Punitive damages against the Defendants sued in their individual capacity;

      e.      Pre and Post-Judgment Interest for all 42 UCS § 1983 claims;

      f.      Post-Judgment Interest for any state law claim;

      g.      Loss of Consortium

      h.      Statutory and Discretionary Costs;

      i.      Attorney's fees where permitted by 42 USC § 1988 or state law;

      j.      All such further relief, both general and specific, to which he may be entitled under the premises.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: **September 25, 2018**.

Respectfully submitted,

s/*Michael P. Maddux*
MICHAEL P. MADDUX, ESQUIRE
Florida Bar No: 964212
Michael P. Maddux, P.A.
Trial Counsel for Plaintiff
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253-3363
Fax: (813) 253-2553
E-Mail: mmaddux@madduxattorneys.com
jsalter@madduxattorneys.com